I'm Robert Jobe, and I'm here today on behalf of Petitioner Skyen Mezlumyan. In this case, the immigration judge's adverse credibility finding is undermined by two what I think to be fundamental errors. For starters, the immigration judge treated Ms. Mezlumyan's credibility as being entirely dependent upon that of her husband. He said that because her husband was not credible, her testimony, quote, must fall also like a house of cards. We think that's erroneous because the fact that Mr. Mezlumyan, I'm going to say Petitioner's husband's testimony was not credible, it doesn't necessarily follow from that. But they're basically telling the same story. They're basically telling the same story. That's right. Yeah. So if his story is false, hers is. If it's false. Yeah. Right. And that's the problem, is that the immigration judge didn't distinguish between an adverse credibility finding and a finding of fraud. If he made a finding, an explicit finding of fraud, he – here he uses the two terms interchangeably. And I think that what you're saying would be true if the immigration judge had a basis to say his testimony was not only not credible, but false. I'm not sure I get the difference. He's trying to figure out if this really happened. That is to say, the IJA is trying to figure out if this really happened. He says he's not credible, the husband, and therefore, I don't believe that it happened or certainly didn't happen in the way that he said. And whether that's fraud or simply it's not true, I don't see that it makes any difference. I think it does make a difference. Because the finding that there's – that a person is not credible simply means he failed to establish that he's telling the truth. It doesn't mean necessarily that he's fabricating something. And in that case, it seems to me, the immigration – it doesn't necessarily follow that the applicant, in this case, that her testimony is not credible. In that case, the immigration judge has an obligation – he can factor in the husband's obligation to examine her demeanor, her consistency, her corroborating evidence, and make a credibility finding based on the totality of his testimony. If you set aside his story and his testimony, because he testified at this hearing, what is there to support her application? Her testimony, her written application. But what's the substance of it? I mean, if she didn't have his – if she didn't have his testimony, does she have enough there to show past persecution or to show on account of a political opinion? I think she does. How? Where? She says that the national security came to her home. They threatened her. They beat her. They kicked her. They attacked her children. I think that raises – that clearly would constitute past persecution. Now, where's the – where's the connection? Well, yeah, there, obviously, would be based on family, probably. Well, she did testify in her declaration that she was a supporter of the – Right. That's true. What was his name? And she testified that when they came to her home, they told her that her husband should stop his activities. So her testimony on that point is in the record. Is that enough? I think it is, yeah. Because, I mean, they're saying he needs to stop his political activities. This is the spouse of a political activist, and they're accusing – they're harming her because of his political activities. So I'd say, yes, that's enough. But ultimately, I don't think – You're talking about the first time when they come to the house, when she is there with the children and he's not there? Right. But ultimately, I don't think that even if you accept the judge's logic here, I don't think there's substantial evidence to conclude that the husband was not credible. And I guess the biggest problem with that, you know, is that it all hinges on what took place at this asylum interview two years earlier. And I can credit Eric Holmes' testimony. And I can credit the petitioner's husband's testimony. The missing link here is the interpreter. We don't really know what was said. I mean, in this case, it reminds me of that PBS documentary, Well-Founded Fear, where they have, you know, TV crews that went into the asylum office and they filmed actual interviews. And you have the interpreter saying one thing, and down at the bottom of the screen, you have an accurate translation of what's actually being said, and they're two very different things. It seems to me like in this particular case, the discrepancies are largely, they really hinge upon the exact formulation of the question. Well, that's true for a lot. And I agree with you. For example, difference between speech and interview. That may be so. Right. Exactly. There's a squirrely thing there that the lawyer at the hearing in front of the IJ tried to bring out. He's asked, who obtained your release? And he says, the PPA. And then the notes say, no, he corrected himself, and he says his sons got him out. Well, his sons were little kids at the time. Right. It's simply incoherent. I think it's virtually impossible that he would have said that. So I take your point, it's pretty clear just reading the thing that there's some difficulties in the translation. But, there are a couple of things that I don't think are so much just translation difficulties. At the end, he is asked by Mr. Holm, any other harm, and he says no. Now, when he's in front of the IJ, he says, I was badly beaten up when I went out to investigate ballot box stuffing. Right. That's nowhere in there. And he says no. Actually. What do you do with that? It is in there. And that troubled me, because this wasn't pointed out in the briefs and the immigration judge missed it as well. But on page 291 of the notes of the record, it's the asylum officer's notes, he does raise this. It's well, it's long before this thing about no, I was never harmed again. And page 291, he says, affirmatively, I also have a medical report for March 16th to 23rd, 1998. And the officer says, why in hospital? During election of March, I was beaten. Who beat you? Okay. And then after that, when the judge says any other harm, and he says no, but he'd already mentioned it. Yeah. But he also leaves out on the other, that's interesting, that helps me out. But he also leaves out the second episode where the, I guess I'll call them the authorities for one of a different word, come to the house. And this time he's there. And this time he says they punch him and they beat him up. And he's, that's not mentioned here in front of the, in front of the asylum officer. Let me just go back to page 293. See, I guess, again, it depends on exactly how the question was being formulated and interpreted. Because it's immediately following any other arrest, other harm. It's not clear to me, are they asking any other harm in police custody, any other harm at any other time? We just really don't know. Yeah. And what do I do? Yeah. I take the point. What do we do also? He apparently testifies. And this, again, it doesn't sound as though you can easily attribute it to translation difficulties. He says in front of the asylum officer, one other person was arrested with me after the speech or interview. And when he's in front of the IJ, he says, no, it was just me. What do I do with that? Well, no. See, again, I'm confused on this point. It depends exactly what he was asked. Let me go to my notes on that. He said that, he was asked, were you arrested alone? He said yes. And then eventually he says, but there was a journalist arrested, also arrested. That doesn't mean they were arrested together. They may well have been arrested. Because he says, now, when you say he said, he said that in front of the asylum officer. In front of the asylum officer. And this is what the IJ is focused in on, is the discrepancy that apparently occurred at the AO interview. But he said, I was arrested alone. And then he later says, but a journalist was also arrested. That doesn't mean they were arrested together. There really isn't a discrepancy there. And again, I mean, the problem with this is the translation is essential. It's key. And without that, I don't think you can say there's substantial evidence. Because, unfortunately, without a contemporaneous record, without a tape recording, we have no way of challenging the notes. There's no way for us to go in and argue that there was a mistranslation. Because the interview was two years before. The AO doesn't speak Armenian. Our client wasn't in the interview. We have no way to do it without a contemporaneous record. Now, this wouldn't happen today. Because today, after that documentary, they changed the procedures. Now, every single interview is monitored by a translator, an official interpreter. That didn't happen back then. And as a result, you had all these people like this guy's an acquaintance of a sister. You had clients bringing in people off the street, you know, who were interpreting for the first time. And a lot of things were going wrong. And that's the problem, it seems to me, in this case. And for that reason, I don't think you can say that substantial evidence supports this adverse credibility finding. Let me ask you one sort of procedural matter. Now, the petitioner's husband's, the IJ's ruling in his case was reversed by the BIA. That's right. Yeah. Sent back. Right. What's the status of that proceeding? He has another lawyer. But it's been remanded back by the BIA. And it's pending before the immigration judge as my. Does that have any significance on this case? A reversal, that is. It could. You know, the BIA's decision simply says that the IJ didn't articulate an adequate basis to find him not credible. In that case, it's a different record. The asylum officer didn't testify. And the BIA pointed that out. But still, I think that ultimately, if they find him credible, then obviously that has a huge impact on this case. Because the judge said that his credibility is determinative of hers. So if you accept that logic, and the BIA ultimately says he's credible, then I think she has to be credible as well. So what should we do with this case? Is this grounds them, since the Cushman case has been remanded, should we wait till the result of that case is obvious? Well, I think, you know, we don't believe that there's substantial evidence supporting this adverse credibility finding. So I would suggest that the court enter a ruling on that point. On the other hand, if we were to lose, obviously you could expect that we would ask the court to stay the mandate pending the resolution of his proceedings. Because obviously, if he wins, they're married, she can derive asylum directly through a grant of asylum to him. All right, thank you. And just in terms of the possibility of waiting, it has now been remanded to the IJ. Right. So if we wait, we're going to wait a while. You will be waiting a long while, because it's going to go back to the board. Because it's going to go back to the board, if you get something adverse out of the board. But realistically, as I kind of looked at that case, is what I think is the likely answer. It's going to come up to us on a petition for review. We're talking years. Probably, yeah. You've used your time, but we'll give you a chance to respond. Thank you, Your Honor. Good morning. May it please the court. My name is Jeffrey Lise. I'm appearing on behalf of the respondent. In the instant case, the petitioner, after a full and fair hearing, was found to be not credible by the immigration judge, and that holding was upheld by the board. He didn't really look at her testimony. It wasn't so much. Just as Mr. Jones said, he found her not credible because the other – because her husband. He found her husband not credible, and as he said, the house of cards is false. That's correct. There were issues the immigration judge took. There was the fact that at her initial airport interview, she said that she was coming here to work with her husband and doing this for her kids, and then she later testified that, you know, that was a lie, that she had lied to the asylum officer – or the – excuse me, immigration officer. The IJ also took – was concerned with the fact that she lived in Russia for two years, went back to Armenia to get fraudulent documents, and then came back to the United States with those fraudulent documents. But yes, it was largely based on his ultimately incredible testimony. But as the alien was – as she was requesting this relief, she had the burden of proving that the evidence that she was submitting was credible. So even though, you know, it's her – his testimony as opposed to her testimony, it's still evidence she submitted in support of her application. Therefore, it should still negatively impact her. You understand the IJ made a finding that she knew his testimony was false? In other words, that I don't believe that she – That she was presenting false testimony. I don't think that she necessarily – well, I mean, the IJ didn't make any finding regarding that as far as I know. At the end of the day, she's still responsible for the evidence which she submits. Even if she submits a document which ultimately gets proven to be fraudulent, and she doesn't know it's fraudulent, that's still going to negatively impact her case if that document, you know, undercuts her testimony. It's the mere fact that she may not have known that his testimony was going to be incredible or that it was false shouldn't necessarily impact whether or not the eventual false – the falseness of that testimony impacts her case. In this case, the husband testified – it's based on his asylum interview and as well as his testimony before the court. He initially testified before the asylum officer that he gave the radio interview or speech or whatever you want to call it with journalists present, that he alone was arrested, and that the arrest made the news. He later told the officer that the journalists were also arrested. He later testified before the immigration judge that there were no journalists present. He told the officer that the second arrest was punishment for his first arrest, which he, in his testimony before the immigration judge, denied. He told the officer that the arrest made the news, that he also testified that that wasn't the case, and not only was it not the case, he didn't tell the asylum officer that. Well, here's what the asylum officer's notes say. The asylum officer's notes say he asked the question, Your arrest make the news? Answer, some, yes. Right. Now, make the news is – now, if that's just a literal English translation, if you say to me, make the news, you and I have an understanding that that shows up in the newspaper or shows up on the TV or radio news. Right. But make the news, in this setting, I'm not sure that that's what that means, and he responds, some. So I have trouble turning that into a flat contradiction when he later says, well, it was a scandal within the party. As far as there being translation issues during the asylum interview, there was no evidence of that whatsoever. Well, no, there's plenty of evidence as I read the transcript. Right. But the – both the asylum officer and the petitioner's husband both said that there were no difficulties during the process. So, I mean, it's kind of Monday-mortar quarterbacking, which is kind of saying, well, this is what he may have said. It's actually hard for either one of them to know whether there were difficulties or not, because the asylum officer speaks English, the petitioner speaks Armenian, and the only person who's capable of understanding both is the translator. That may be true. So how are they to know whether there are problems with the translator? I mean, I think it refers to when they were asking questions, if there were any difficulties between what they were asking and answering. As far as can we definitively say one way or the other, I guess we cannot. However, the record – I mean, the standard here is whether the record compels the conclusion that the immigration judge erred in interpreting these things that way. Let me ask you this. Assume for a moment that we put to one side the husband's testimony, and we just discount it. And we look only at the wife's testimony that testifies to different episodes from the ones that he testifies to. She's got one in which, according to her testimony, he's not even there. And that's the first episode where the, quote, authorities, close quote, come in, search the house, beat her up, beat the children. Right. And they do so because of his political views and so on. If that were standing alone, would that be enough, standing alone and believed? I guess that it's hard to say either way. The reason being that his testimony is kind of the elephant that's either in the room or out of the room. Because a lot of the harm either directly was hurt – you know, he was harmed by the authorities or because it's derivative harm that because of his activities, that's why – that's the motivation for them coming to the home. It's hard to say whether or not – I mean, if he had not testified, there would probably be other issues raised as to whether or not she had met her burden of demonstrating this was actually – you know, if she had had any kind of other evidence to support this. Because if it's just her testimony alone on that issue without him testifying, even though he's in the country and has – I think that you can't definitively say either way whether or not the immigration judge would have come down on that. I think that had he not testified, it would have raised other issues as to, you know, corroborating evidence, things of that nature. What do we do with the following idea? It seems to me as to certain things, his testimony both in front of the IJ and his – I'll call it testimony in front of the asylum officer as recounted in the notes and then as recounted by the asylum officer and then as he sort of glosses it himself. With respect to certain things, it seems pretty consistent. That is, for example, the radio speech or interview. You know, okay, speech or interview, who was there, who wasn't there. I mean, there's some minor little things, but the story's pretty consistent start to finish on that one. And if the IJ looking only at that says, I make an adverse credibility finding, I would reverse on that ground. Now, there's some other grounds which the consistency seemed to me more important and probably not as easily attributable to possible sort of nuance and translation and so on. What do I do if adverse credibility – what do I do if I think he simply has to be reversed on one part of the story but maybe sustained on other parts of the story, but if I believe the story about the interview and the subsequent punishment, that's enough. What do I do? Well, I mean, this Court has held previously that if you disbelieve one aspect, that can be enough to substantiate an adverse credibility finding. I think that in this case, the majority of the issues, I mean, even the things as to who was present, I think that does go to the heart of the claim. If it's just him getting arrested, that makes it seem like he was the important one, the ringleader. If there are other people getting arrested, it makes it seem like it's kind of more of a broad kind of crackdown. The same thing with whether or not the arrest made the news. I think that if it makes the news and if it actually means it made the newspapers, was reported, that makes it seem like he's a much bigger figure than if it doesn't make any kind of news whatsoever. Counsel, if I may, I'd like to go back to Judge Fletcher's question. Suppose one of her claims is not a derivative claim at all. She was beaten up and her children were accosted. Suppose we're not talking about a derivative claim and we believe her. Isn't that enough? The problem is that the immigration judge didn't make an alternative finding relating to whether or not the harm she suffered or that he suffered rose to the level of persecution. So all we have in front of us is the credibility of determination. In terms of whether or not that would be enough, I think that in this case, because her case was so tied to his case that it's kind of hard to kind of break it apart. It's essentially saying, you know, we'll believe this one aspect even if we're not going to believe the other one. So it's kind of part and parcel deciding which aspects when the immigration judge himself didn't make that finding. He found that because of his testimony, as well as the issues with her asylum interview, as well as her going back to Armenia to get fraudulent documents, that all combined resulted in an average credibility determination. So what effect does the remand or the husband's case have on this case? Well, the board in remanding, they took note of this current case in front of us right now, and it seems to me that they didn't find the Petitioner's husband to be credible. They essentially remanded the immigration judge to kind of flesh out the reasons why. There were some issues where, as Officer Holm testified in our case, he didn't testify in the husband's case. The results of the immigration judge kind of made conclusions without really explaining why he was doing so. My guess, and it's just a speculative guess, is that had the board, if the board was going to reverse or, you know, vacate the credibility finding, they would have done it in the decision back in April. I think that this is kind of like giving the immigration judge an opportunity to kind of explain it more. It's going to come back to the board. My guess is the board's going to affirm it and it's going to come up here. If the court finds that the Petitioner in our case is not credible and denies the Petitioner for review, as opposing counsel said, if his case is still pending, so she can still potentially get relief via him, would it negatively impact his case? Sure. I think that if this Court has a decision saying, you know, he was found not credible in this case, it would probably at least look at, if not applied it directly to his case when it comes to the court. But to answer your question, I think that it has an impact. As of right now, I can't definitively say whether it would come out either way. Thank you. And if there are no further questions, the Respondent requests the denied Petition for review. Okay. Thank you. Mr. Jobe. Just very briefly, I think I agree with the government that if the adverse credibility finding is unsupported by substantial evidence, I don't think you should or can get into whether or not she's demonstrated her eligibility for asylum. That's the BIA said she doesn't qualify for asylum, but his decision seems to hinge on this adverse credibility finding. So if that must be vacated, the case should be remanded back. Any other questions? Yeah, let me just puzzle this through a little bit. Depends on what we say in terms of adverse credibility. It does seem to me that the IJ leaves out any direct confrontation with the evidence that she has presented. I mean, his phrase is falls like a house of cards. Right. Without addressing whether or not that one episode where she's home only with the children might or might not have happened. Right. So if we were to say, well, listen, he's simply not made an adverse credibility finding with respect to those things to which she herself was the sole witness. Now, is that the adverse credibility finding you want us to reverse or do you want us to reverse the adverse credibility finding as to him, too? I assume you want the second as well. Yeah, we would. But even if we only went on the first point, that the IJ never actually confronted the credibility of her testimony, that requires a remand in and of itself. Because that's evidence that the immigration judge never considered and which may constitute a valid claim for asylum. And now I'm back to adverse credibility finding as to the husband. The IJ's adverse credibility finding in his decision and the support for it is pretty thin. I think he recognizes it's pretty thin because when he's finished, he says, for this reason or these reasons and others that appear from the record. Right. What do we do with the discrepancies that I gave to you, for example, he doesn't mention. Right. I mean, our case law is clear that the IJ has to give a specific and cogent reason to support his adverse credibility finding. If he doesn't mention it, it's not a specific. So so we're so we're restricted in evaluating his adverse credibility finding for the reasons that he himself gives, not the ones that I might independently see in the record and that he refers in this very general way to as other grounds that are apparent from the record. I think that's absolutely correct. OK, thank you. Thank you. Thank both sides for your useful argument. The case of Muslimian was submitted for decision.
judges: D.W. Nelson, W. Fletcher, Paez